T.C. Summary Opinion 2017-29

UNITED STATES TAX COURT

EDGAR DAVID BROWN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20970-14S.                        Filed May 8, 2017.

Edgar David Brown, pro se.

Paul Isherwood and Nicholas R. Rosado, for respondent.

SUMMARY OPINION

PANUTHOS, Chief Special Trial Judge:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, subsequent section references are to the

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated June 6, 2014, respondent determined a deficiency of $15,453 in petitioner's 2011 Federal income tax, a section 6651(a)(1) addition to tax of $2,432 for failure to timely file a return, and a section 6662(a) accuracy-related penalty of $3,091.

After concessions,[2] the issues for decision are:

(1) whether petitioner is entitled to deduct charitable contributions for the year in issue;

(2) whether petitioner is entitled to deduct miscellaneous expenses for the year in issue;

(3) whether petitioner is entitled to deduct unreimbursed employee business expenses for the year in issue;

---

[1](...continued)
Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]At trial petitioner conceded the home mortgage interest deduction of $9,151 and the mortgage insurance premium deduction of $1,578 claimed on his 2011 Federal income tax return and the taxable State income tax refund of $2,253 not reported on his return. Petitioner also conceded that his income tax withheld for the year in issue was $5,897 and not $13,491 as claimed on the return.

(4) whether petitioner is entitled to deduct job search expenses for the year in issue;

(5) whether petitioner is entitled to deduct home office expenses for the year in issue;

(6) whether petitioner is liable for the section 6651(a)(1) addition to tax for failure to timely file his 2011 Federal income tax return; and

(7) whether petitioner is liable for the accuracy-related penalty under section 6662(a) for the year in issue.

## Background

Petitioner resided in California when his petition was timely filed.

I.   Professional Background

Petitioner is a financial services professional.  During 2011 he was employed by Metropolitan Transportation Commission (MTC), a quasi-governmental agency that administers the regional planning and the distribution of transit funds in the San Francisco area.  Petitioner's primary responsibility at MTC was the oversight of the clearing and settlement system that supported transit fare collection for the San Francisco area.  Clearing and settlement involves using payment mechanisms such as credit cards to replenish amounts on fare cards, which are used to pay for transit services.

MTC had a written policy for reimbursing employees for their work-related expenses for the year in issue.[3]

Petitioner worked regularly at an office provided by MTC. Sometimes petitioner worked at home, either telecommuting during regular business hours or working after hours. Petitioner resided in a four-bedroom house of approximately 2,000 square feet. Petitioner converted one of the four bedrooms into a home office of approximately 220 square feet. It contained office items including a computer, a scanner, a modem, a router, a telephone, a typewriter, and plastic bins holding files kept for work projects, tax records, and other items.

During 2011 petitioner sought a new position in the financial services field. Petitioner traveled for interviews and had conversations with people at various potential employers including the Federal Reserve Bank in Philadelphia, Pennsylvania, the Environmental Protection Agency, and Qualcomm.

Petitioner was also an independent business owner for ACN during the year in issue. ACN is a multilevel marketing company that repackages and resells services from various vendors. Petitioner could earn commissions from ACN

---

[3]MTC's written employee expense reimbursement policy was not made a part of the record.

based on a percentage of the amounts of services he sold to customers. Petitioner did not have any gross receipts from his activity with ACN.

## II.    Julian Brown Memorial Fund

In 2005 petitioner established the Julian Brown Memorial Fund (Memorial Fund). During 2011 the Memorial Fund qualified as an exempt organization under section 501(c)(3).

The Memorial Fund hosted an annual soccer tournament in Charlotte, North Carolina. Petitioner owned a house in North Carolina and stayed in this house when he visited Charlotte for the tournament.

## III.   Records Maintenance and Computer Failure

Petitioner maintained his business records and other records, including records he used to prepare his Federal income tax returns, on a personal computer. In 2011 petitioner's personal computer "crashed", resulting in a loss of tax records for 2010 and part of 2011.[4] Petitioner took the computer to Best Buy for repair in July 2011 but was informed that it was not salvageable. Some of petitioner's 2011

---

[4]Petitioner asserts that the computer crash occurred in "mid-year 2011". In petitioner's prior case for his 2010 tax year, the Court found that the computer crash had occurred in February 2011. See Brown v. Commissioner, T.C. Summary Opinion 2016-89. Petitioner did not provide an explanation for this discrepancy.

Federal income tax records were unavailable because of this computer failure.

Petitioner used bank statements to reconstruct some of his 2011 expenses.

IV.    2011 Tax Return

Petitioner filed a delinquent 2011 Form 1040, U.S. Individual Income Tax

Return, on December 31, 2012.[5]  He reported his salary from MTC and $7,765 of

tax due.  Petitioner did not file a Schedule C, Profit or Loss From Business, for his

activity with ACN and did not report any gross receipts from this activity.

On Schedule A, Itemized Deductions, petitioner claimed a $9,200 deduction

for charitable contributions by cash or check.  He also claimed the following

miscellaneous itemized deductions:  (1) $4,039 in unreimbursed employee

business expenses; (2) $233 in tax return preparation fees; and (3) $7,849 in

attorney's and accountant's fees.  Petitioner attached a Form 2106-EZ,

Unreimbursed Employee Business Expenses, reporting $4,039 in unreimbursed

employee business expenses.  He did not provide a detailed breakout of these

expenses on his return.

---

[5]Petitioner requested an extension of time to file his 2011 Form 1040, extending the due date to October 15, 2012.

Petitioner prepared his 2011 Form 1040 using TurboTax software. He prepared a number of versions of his 2011 Form 1040 with "what if" scenarios, including one in which he had had more income tax withheld during the year.

Petitioner provided a copy of a screenshot from the TurboTax program that listed various versions of tax returns created, with titles such as "2011-Edgar Filing HOH-As Filed" and "2011 Edgar Filing HOH-As Submitted". Some of these documents were last modified in 2012, and the rest were modified in 2015 or 2016.[6]

V.    Notice of Deficiency and Trial

On June 6, 2014, respondent issued a notice of deficiency to petitioner for tax year 2011. Respondent adjusted various items on petitioner's 2011 Form 1040, including charitable contribution deductions and miscellaneous itemized deductions. Petitioner timely filed a petition for redetermination.

Petitioner would not agree to stipulate any documents before or during trial.[7] Respondent introduced into evidence a copy of petitioner's 2011 Form

---

[6]The printout itself did not have a time stamp; instead it listed the dates on which the documents had been modified. One document titled "2011-Edgar Filing HOH-As Submitted" was modified on September 12, 2016.

[7]As previously indicated, petitioner had a trial before the Court with respect to his 2010 tax year. See Brown v. Commissioner, T.C. Summary Opinion 2016-

(continued...)

1040 as filed, a copy of the notice of deficiency, a certified copy of petitioner's certified wage and income transcript for 2011, and a certified copy of petitioner's 2011 Form 4340, Certificate of Assessments, Payments, and Other Specified Matters.

Petitioner provided copies of PDF files he called "summary of expenses" at trial for purposes of substantiating many of his expenses. Each summary of expenses document listed a transaction description, copied from bank statements. For example, the summary contained a description such as "Online banking transfer" or the check card number used and the name of the vendor, a date, an amount, and the expense category that petitioner had assigned.

A.     Deductions Claimed on Petitioner's Return

After concessions and additional amounts claimed,[8] the deductions in dispute are as follows:

_____

[7](...continued)
89. Thus, petitioner has some familiarity with Court procedure and practice. The Court reminded petitioner of the Rules and also the benefits of stipulation. Petitioner nevertheless refused to stipulate documents, including his 2011 Form 1040 as filed, which he acknowledged was the return which he filed for 2011.a

[8]Petitioner claimed a $9,200 charitable contribution deduction on his return and conceded $901. Petitioner claimed a $4,039 deduction for unreimbursed employee business expenses on his return and claimed a $4,651 deduction at trial.

| Deduction | | Amount |
|---|---|---|
| Charitable contributions | | $901 |
| Tax return preparation fees | | 233 |
| Attorney's and accountant's fees | | 7,849 |
| Unreimbursed employee business expenses | | |
| Automobile | 3,363 | |
| Tolls | 197 | |
| Parking | 347 | |
| Publications | 744 | |
| Total | | 4,651 |

Petitioner presented copies of summaries of expenses at trial relating to his charitable expenses and some of his unreimbursed employee business expenses (automobile, tolls, and publications expenses).

Petitioner's summary of charitable expenses listed 45 entries, reflecting charges on credit cards or bank cards. The expenses can be broken down as follows: (1) 14 entries totaling $492, paid to restaurants or an indiscernible payee (either no entry, inadequate description, or multiple entries for one expense) and (2) 31 entries totaling $409, paid to punchbowl.com, hst*julianbrownmemorial, bigstockphoto.com, Facebooktabsite, and Google*youtube.

Petitioner also provided a printout of the Charlotte United Soccer Club calendar for April 2011 that listed Julian Brown Memorial Cup events on April 16 and 17, 2011.

Petitioner did not provide copies of any documents for purposes of substantiating either his tax return preparation expense or his attorney's and accountant's fees, each deducted on his Schedule A. Petitioner also did not provide the copies of his bank statements which he asserts he used to reconstruct his 2011 expenses. Further, petitioner also did not provide underlying receipts or other documentation, with the exception of his job search expenses.

B.    Additional Deductions Claimed at Trial

Petitioner asserts he is entitled to additional deductions for the following expenses:  (1) job search expenses; (2) Schedule C expenses relating to his ACN activity; and (3) home office expenses.[9]

First, petitioner asserts he is entitled to deduct $2,476 for travel and other expenses related to his job search. Petitioner provided copies of receipts for the following job search expenses:[10]

---

[9]Although petitioner did not raise the additional expenses in his petition, we consider this issue to have been tried by consent. See Rule 41(b).

[10]The summary of petitioner's job search expenses is a poor copy and

(continued...)

| Travel dates | Expense | Location(s) | Amount |
|---|---|---|---|
| Jan. 9 | Hotel | Washington, D.C. | $181 |
| Jan. 9-11 | Hotel | Washington, D.C. | 440 |
| Mar. 3-8 | Flight | Washington, D.C. to San Francisco, Cal. | 110 |
| Mar. 27-31 | Hotel | Miami, Fla. | 974 |
| Mar. 27-31 | Flight | San Francisco, Cal. to Miami, Fla. | 1,224 |
| July 3 | Flight | San Francisco, Cal. to Los Angeles, Cal. | 83 |
| July 6 | Train | Washington, D.C. to Philadelphia, Pa. | 48 |
| Total | | | 3,060 |

Second, petitioner asserts that he is entitled to a deduction of $1,754 for "network marketing expenses" related to his involvement with ACN, which he asserts should be deducted on Schedule C.  Petitioner provided a summary of expenses with nine entries totaling $1,754, paid to retailers such as Costco, Beverages & More, and Target.

---

[10](...continued)
difficult to read.  The expenses total $2,755, and petitioner subtracts $279 which he states is attributable to meals and entertainment ($2,755 − $279 = $2,476).  The copies of receipts attached reflect expenses totaling $3,060.  It is unclear whether the entries on the summary of expenses correlate with the attached receipts, and it is also unclear why petitioner is claiming a deduction of $2,476 for total job search expenses.

Third, petitioner asserts that he is entitled to a deduction of $4,248 for home office expenses. Petitioner provided a printout of a Powerpoint slide which calculates home office expense deductions as follows:[11]

| Expense type | Total | Business use percentage | Total business use | ACN | Other |
|---|---|---|---|---|---|
| Rental | $14,337 | 11% | $1,577 | $1,025 | $552 |
| Computer | 1,065 | 50% | 533 | 346 | 186 |
| Telephone and fax | 4,275 | 50% | 2,138 | 1,390 | 748 |
| Total | | | 4,248 | 2,761 | 1,486 |

Petitioner also provided copies of three recent photographs of his home office showing the following: (1) a tall stack of plastic bins of various colors, some of which appear to contain papers; (2) a desk with three computers, a typewriter, and other miscellaneous office items; and (3) a shelf with a telephone, a router, a few three-ring binders, and other miscellaneous office items.[12]

---

[11]The business use percentage for the home office is based on the 220 square footage of the room divided by the 2,000 total square footage of the house (220 square feet ÷ 2,000 square feet = 11%). Petitioner did not explain the basis for the 50% estimate for the business use of his computer and telephone and fax. Petitioner also did not explain the basis for his allocation of the total business expenses, resulting in network marketing expenses of $2,761 and other expenses of $1,487.

[12]Petitioner took the photographs of his home office on September 11, 2016. The composition of items in petitioner's home office has changed somewhat since 2011. For example, in 2011 petitioner had only one computer in his home office,

(continued...)

Discussion

I.    Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances.  Petitioner did not allege or otherwise show that section 7491(a) applies.  See sec. 7491(a)(2)(A) and (B).  Therefore, petitioner bears the burden of proof.  See Rule 142(a).

II.   General Principles Governing Substantiation

Deductions are a matter of legislative grace, and a taxpayer is required to maintain records sufficient to substantiate expenses underlying deductions claimed on his or her return.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.; see New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

If the taxpayer is able to establish that he paid or incurred a deductible expense but is unable to substantiate the precise amount, the Court generally may approximate the deductible amount, but only if the taxpayer presents sufficient

_____

[12](...continued)
whereas he currently has three.  Respondent did not object to the admission of these copies of color photographs into evidence.

evidence to establish a rational basis for making the estimate. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see also Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Business expenses specified in section 274 are subject to rules of substantiation that supersede the Cohan test. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

III.    Section 162 Expenses

Section 162(a) generally allows deductions for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. In general, no deduction is permitted for personal, living, or family expenses. Sec. 262(a). The taxpayer bears the burden of proving that expenses were of a business nature rather than personal and that they were ordinary and necessary. Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

Petitioner seeks to deduct $4,651 in unreimbursed employee business expenses relating to his employment with MTC and $1,754 in network marketing expenses relating to his activity with ACN.

A.    Unreimbursed Employee Business Expenses

On his Schedule A petitioner claimed a deduction of $4,039 for unreimbursed employee business expenses.  He now claims unreimbursed employee business expenses totaling $4,651 ($3,363 for automobile expenses, $197 for tolls expenses, $347 for parking expenses, and $744 for publications expenses).  Petitioner provided summaries created from bank statements to substantiate his automobile expenses, tolls expenses, and publications expenses.

Qualifying expenses under section 162 include expenses paid or incurred as an employee.  Lucas v. Commissioner, 79 T.C. 1, 6 (1982).  Expenses are not "necessary" when an employee fails to claim reimbursement for expenses incurred in the course of his employment when entitled to do so.  Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533.  Accordingly, a taxpayer cannot deduct employee business expenses to the extent he is entitled to reimbursement from his employer for those expenses.  See Lucas v. Commissioner, 79 T.C. at 7.  Deductions for those expenses belong to the employer.  See Kennelly v. Commissioner, 56 T.C. 936, 943 (1971), aff'd without published opinion, 456 F.2d 1335 (2d Cir. 1972).

The taxpayer bears the burden of proving that he is not entitled to reimbursement from his employer for such expense.  See Fountain v.

Commissioner, 59 T.C. 696, 708 (1973). The taxpayer can prove that he was not entitled to reimbursement by showing, for example, that he was expected to bear these costs. See id.; see also Dunkelberger v. Commissioner, T.C. Memo. 1992-723, 1992 WL 379282, at *1 (finding that management team expected taxpayer to bear expense of business lunches with vendors).

Petitioner asserted that his employer MTC had a written reimbursement policy for employees, but MTC's unofficial policy did not provide for reimbursement of some of his employee business expenses. Petitioner asserted that "legitimate business expenses * * * that exceeded a per diem, for example, would not be reimbursed" and that MTC would reject reimbursement requests for expenses that qualified under the written reimbursement policy. Petitioner also asserted that he did not submit reimbursement requests for some qualifying expenses because he knew that the requests would be rejected under the unofficial reimbursement policy.

Petitioner has not offered credible evidence to corroborate his testimony about MTC's "unofficial reimbursement policy" and that it differed from MTC's written reimbursement policy. Because petitioner did not provide a copy of MTC's written reimbursement policy or sufficient detailed evidence of MTC's unofficial reimbursement policy, we cannot make a finding as to which of the

expenses might have been eligible for reimbursement by MTC.  Petitioner has not met his burden of showing that MTC would not have reimbursed the automobile, tolls, parking, or publications expenses.  See Orvis v. Commissioner, 788 F.2d at 1408; Lucas v. Commissioner, 79 T.C. at 7; Fountain v. Commissioner, 59 T.C. at 708; Dunkelberger v. Commissioner, 1992 WL 379282, at *1.  Therefore, petitioner is not entitled to a deduction for his unreimbursed employee business expenses.

B.    Network Marketing Expenses

Petitioner claims a deduction of $1,754 for network marketing expenses, which he asserts is related to his activity as an independent business owner at ACN.

Taxpayers are allowed a deduction for ordinary and necessary expenses paid or incurred in carrying on a trade or business.  Sec. 162(a).  Whether an expenditure is ordinary and necessary is usually a question of fact.  Commissioner v. Heininger, 320 U.S. 467, 475 (1943).  Generally, for an expenditure to be an ordinary and necessary business expense, the taxpayer must show a bona fide business purpose for the expenditure; there must be a proximate relationship between the expenditure and the business of the taxpayer.  Challenge Mfg. Co. v.

Commissioner, 37 T.C. 650, 659-660 (1962); Henry v. Commissioner, 36 T.C. 879, 884 (1961); sec. 1.162-1(a), Income Tax Regs.

For the network marketing expenses, petitioner merely presented a summary of purported expenses at trial, asserting that the summary represented business expenses. Petitioner did not provide testimony or other evidence to establish a bona fide business purpose for these expenses. Thus, we are unable to make a finding as to whether the expenses are ordinary and necessary or whether they are reasonable in amount. See sec. 162(a); Commissioner v. Heininger, 320 U.S. at 475; Challenge Mfg. Co. v. Commissioner, 37 T.C. at 659-660; Henry v. Commissioner, 36 T.C. at 884. Therefore, petitioner is not entitled to a deduction for the network marketing expenses related to his ACN activity.

IV.    Section 274 Expenses

Petitioner claims a deduction of $2,476 for hotel, flight, and train expenses incurred during his job search.

Section 162(a) allows a taxpayer to deduct expenses incurred in searching for new employment within the same trade or business. See Primuth v. Commissioner, 54 T.C. 374, 378-379 (1970). Job search expenses include travel and transportation expenses. See Murata v. Commissioner, T.C. Memo. 1996-321, 1996 WL 392503, at *6-*7.

Traveling expenses are subject to the strict substantiation requirements of section 274(d). To deduct travel expenses, the taxpayer must substantiate through adequate records or other corroborative evidence the following elements: (1) the amount of the expense; (2) the time and place of the expense; and (3) the business purpose of the expense. Sec. 274(d).

A taxpayer satisfies the "adequate records" test if he or she maintains an account book, a diary, a log, a statement of expense, trip sheets, or similar records prepared at or near the time of the expenditures, such as receipts or bills, that show each element of each expenditure or use. See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Contemporaneous logs are not required, but corroborative evidence to support a taxpayer's reconstruction of the elements of an expenditure or use must have "a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Id. subpara. (1), 50 Fed. Reg. 46016-46017.

Section 274(d) was intended to preclude use of the test set forth in Cohan for the expense categories it covers. Sanford v. Commissioner, 50 T.C. at 828; H.R. Rept. No. 1447 (1962), 1962-3 C.B. (Part 3) 405, 427; S. Rept. No. 1881 (1962), 1962-3 C.B. (Part 3) 707, 741. If a taxpayer's records have been destroyed or lost because of circumstances beyond his control, he may substantiate expenses

subject to section 274(d) by making a reasonable reconstruction of the expenditures through other credible evidence. Boyd v. Commissioner, 122 T.C. 305, 320 (2004); Furnish v. Commissioner, T.C. Memo. 2001-286, 2001 WL 1325956, at *4; sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985). The burden is on the taxpayer to show that the documentation was actually lost or destroyed because of circumstances beyond his control. See Rule 142(a)(1); Adler v. Commissioner, T.C. Memo. 2010-47, 2010 WL 934267, at *9, aff'd, 443 F. App'x 736 (3d Cir. 2011).

A taxpayer is required to reconstruct pertinent records to the fullest extent possible. See, e.g., Chong v. Commissioner, T.C. Memo. 2007-12, 2007 WL 109055, at *3. If no other documentation is available, the Court may, but is not obliged to, accept credible testimony of a taxpayer to substantiate an expense underlying a deduction. See Boyd v. Commissioner, 122 T.C. at 320 (citing Watson v. Commissioner, T.C. Memo. 1988-29); Freeman v. Commissioner, T.C. Memo. 2009-213, 2009 WL 2958663, at *6. The test set forth in Cohan comes back into play in these circumstances. See Scully v. Commissioner, T.C. Memo. 2013-229, at *17. In the absence of adequate records to establish each element of an expense under section 274(d), a taxpayer may alternatively establish each element: "(A) By his own statement, whether written or oral, containing specific

information in detail as to such element; and (B) By other corroborative evidence sufficient to establish such element." Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985); see also Lussy v. Commissioner, T.C. Memo. 2015-35, at *12.

Petitioner seeks to deduct travel expenses incurred during his job search. At trial petitioner stated merely that he had "sought interviews and exploratory conversations with a range of financial services companies" and listed only three potential employers with which he had sought interviews/conversations. Although petitioner provided copies of receipts to substantiate these expenses, which provided the dates and amounts paid, he did not provide any information about the business purpose of the expenses, such as where he interviewed or the individual(s) conducting interviews.

Petitioner's receipts, without corroborating information such as locations or names of individuals who interviewed him to establish a business purpose, are by themselves insufficient to meet the strict substantiation requirements for travel expenses under section 274(d). See secs. 162(a), 274(d); Primuth v. Commissioner, 54 T.C. at 378-379; sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).

We note that petitioner testified about the computer failure in 2011 that caused him to lose some of his records for the year.  See Rule 142(a)(1); Adler v. Commissioner, 2010 WL 934267, at *9.  But we are not satisfied that petitioner made a reasonable reconstruction of each element of his claimed deductions through other credible evidence.  Petitioner merely provided summaries of purported expenses and did not reconstruct records to establish the business purposes for his claimed expenses through testimony or other evidence.  See Lussy v. Commissioner, at *12; sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., supra.

Therefore, because petitioner did not establish the business purpose for the job search expenses, he is not entitled to a claimed deduction for same.

V.      Charitable Contributions

On his return petitioner claimed a charitable contribution deduction of $9,200, but conceded some of this amount at trial.  Petitioner provided a summary of expenses totaling $901 which he asserts were related to his work for the Memorial Fund.

No deduction is allowed under section 170 for a contribution of services.  However, "unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a

deductible contribution." Sec. 1.170A-1(g), Income Tax Regs. To be deductible, unreimbursed expenses must be directly connected with and solely attributable to the rendition of services to a charitable organization. Van Dusen v. Commissioner, 136 T.C. 515, 525 (2011); Saltzman v. Commissioner, 54 T.C. 722, 724 (1970). "In applying this standard, courts have considered whether the charitable work caused or necessitated the taxpayer's expenses." Van Dusen v. Commissioner, 136 T.C. at 525.

### A. Meals and Other Expenses

Petitioner asserts that he is entitled to deduct unreimbursed expenses for meals and other travel expenses totaling $492 that he incurred in connection with a North Carolina soccer tournament sponsored by the Memorial Fund.

A taxpayer may deduct "out-of-pocket transportation expenses necessarily incurred in performing donated services" and "[r]easonable expenditures for meals and lodging necessarily incurred * * * in performing donated services". Sec. 1.170A-1(g), Income Tax Regs. Section 170(j) provides that no deduction is allowed "for traveling expenses (including amounts expended for meals and lodging) while away from home, whether paid directly or by reimbursement, unless there is no significant element of personal pleasure, recreation, or vacation in such travel." As this Court has stated: "[T]ravel expenditures which include a

substantial, direct, personal benefit * * * are not deductible." Tafralian v.

Commissioner, T.C. Memo. 1991-33; see also Babilonia v. Commissioner, 681

F.2d 678, 679 (9th Cir. 1982), aff'g T.C. Memo. 1980-207.  The burden of proving

that such expenditures qualify as charitable contributions rests with the taxpayer.

Tafralian v. Commissioner, T.C. Memo. 1991-33.

Petitioner failed to establish that his travel to North Carolina and the

expenses for meals whose costs he seeks to deduct involved "no significant

element of personal pleasure, recreation, or vacation in such travel."  See sec.

170(j).  While he credibly testified that he established the Memorial Fund and its

soccer tournament, petitioner did not specify what he did for the 2011 tournament

or how much time he devoted to it.  Without this information, we cannot conclude

that petitioner's trip to North Carolina, where he owns a home, was directly

connected with and solely attributable to services performed at the tournament.

See Babilonia v. Commissioner, 681 F.2d at 679; Tafralian v. Commissioner, T.C.

Memo. 1991-33.  Therefore, petitioner is not entitled to a deduction for charitable

meals and other expenses.

B.     Website Costs

Petitioner also asserts that he is entitled to deduct expenses totaling $409

that he incurred to maintain the Memorial Fund's website.  None of the individual

expenses was greater than $250.

Contributions through the payment of unreimbursed volunteer expenses of

less than $250 are subject to the requirements for contributions of money set forth

in section 1.170A-13(a), Income Tax Regs.  Van Dusen v. Commissioner, 136

T.C. at 531.  A taxpayer is required to maintain a canceled check or a receipt from

the donee organization.  Sec. 1.170A-13(a)(1), Income Tax Regs.  In the absence

of a canceled check or a receipt from the donee organization, the taxpayer must

maintain other reliable written records showing "the name of the payee, the date of

the payment, and the amount of the payment."  Van Dusen v. Commissioner, 136

T.C. at 534; see also sec. 1.170A-13(a)(1), Income Tax Regs.

Petitioner credibly testified that he volunteered for the Memorial Fund, that

he paid for website expenses to maintain the Memorial Fund's website, and that he

was not reimbursed for these website expenses.  Petitioner provided a written

record in the form of his summary of expenses.  We find these reported

expenditures to be "directly connected with and solely attributable to the rendition

of services to a charitable organization" because petitioner incurred them to

promote the Memorial Fund.  Since the entries in the summary show the date and amount of the contribution and the name of the payee, we conclude that petitioner is entitled to deduct these payments.  See Van Dusen v. Commissioner, 136 T.C. at 534; sec. 1.170A-13(a)(1), Income Tax Regs.

Accordingly, petitioner is entitled to a total deduction of $409 for charitable contributions.

VI.    Home Office Expenses

Petitioner seeks to deduct home office expenses totaling $4,248 ($1,487 for "other", including working from home for MTC, and $2,761 for his ACN activity). A taxpayer generally is not entitled to deduct any expenses related to a dwelling unit used as a residence during the taxable year.  Sec. 280A(a).  A taxpayer may deduct expenses allocable to a portion of the dwelling unit which is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer or a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of the trade or business.  Id. subsec. (c)(1)(A) and (B).  The "exclusive use" requirement is an "all-or-nothing standard".  Hamacher v. Commissioner, 94 T.C. 348, 357 (1990).  Further, it must be used exclusively for the employer's work and not for

personal use. Sec. 280A(c)(1); Cadwallader v. Commissioner, 919 F.2d 1273, 1275 (7th Cir. 1990), aff'g T.C. Memo. 1989-356.

A. Home Office Use as an Employee of MTC

In the case of a taxpayer who is an employee, the home office must be maintained for the convenience of the employer; it cannot just be a place in which the employee chooses to do some of his work. Sec. 280A(c)(1) (flush language); Frankel v. Commissioner, 82 T.C. 318, 323, 326 (1984). Such use has been found where the home office was necessary for the functioning of the employer's business or necessary to allow the employee to perform his duties properly. Frankel v. Commissioner, 82 T.C. at 325-326. A home office is not for the convenience of the employer if it is maintained merely for the employee's own convenience, comfort, or economy; for example, where the employee finds it more convenient to work from home instead of staying late at the office or where the employee prefers to perform certain activities at home. See Sharon v. Commissioner, 591 F.2d 1273, 1274 (9th Cir. 1978), aff'g 66 T.C. 515 (1976); Hamacher v. Commissioner, 94 T.C. at 358.

Petitioner, as an employee of MTC, had an office that MTC provided where he worked regularly during 2011. Petitioner asserts that he worked in his home office when he telecommuted and after normal business hours. Petitioner did not

assert nor provide evidence that MTC required him to maintain the home office or to work from home or that it was necessary for him to maintain the home office to perform his duties properly. See Frankel v. Commissioner, 82 T.C. at 325-326. Instead, it appears that on occasion petitioner preferred to work from his home office instead of at MTC's office. On the basis of this record, we conclude that petitioner chose to maintain the home office and work from home for his own convenience, comfort, and economy. See sec. 280A(c)(1) (flush language); Sharon v. Commissioner, 591 F.2d at 1274, Hamacher v. Commissioner, 94 T.C. at 358-359; Frankel v. Commissioner, 82 T.C. at 326. Therefore, petitioner's claimed home office expense deductions relating to his employment for MTC are not deductible.

B.     Home Office Use for ACN Activity

A taxpayer may have only one principal place of business for each business in which he is engaged. See Curphey v. Commissioner, 73 T.C. 766, 776 (1980). To determine the principal place of business for the purpose of a home office expense the Court must also ascertain the "focal point" of a taxpayer's business activities. Jackson v. Commissioner, 76 T.C. 696, 700 (1981); Baie v. Commissioner, 74 T.C. 105, 109 (1980). The taxpayer must be able to demonstrate how much time is spent in the home office compared with how much

time is spent at other locations to demonstrate that the home office is the "focal point" of his business activities and thus his principal place of business. Christine v. Commissioner, T.C. Memo. 2010-144, 2010 WL 2640125, at *11, aff'd without published opinion, 475 F. App'x 259 (9th Cir. 2012).

Petitioner did not provide testimony or other evidence about his activity with ACN, including how much time he spent on the activity in his home office compared with how much time he spent at other locations. Therefore, petitioner did not demonstrate that the home office was the "focal point" of his activity for ACN. See Christine v. Commissioner, 2010 WL 2640125, at *11. Further, petitioner did not provide testimony nor other evidence that the home office was used exclusively for business purposes and not for personal use. See sec. 280A(c)(1); Cadwallader v. Commissioner, 919 F.2d at 1275. Therefore, petitioner's claimed home office expenses deductions relating to his activity with ACN are not deductible.

VII.   Other Miscellaneous Expenses

On his Schedule A petitioner claimed deductions of $233 for tax return preparation fees and $7,849 for "attorney and accounting fees". Petitioner did not address these deductions at trial and did not provide testimony or other evidence

to substantiate these deductions. On the basis of this record, we conclude that he is not entitled to deductions for these expenses.

## VIII. Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (including extensions) unless the taxpayer can establish that the failure is due to reasonable cause and not due to willful neglect. Section 7491(c) provides that the Commissioner has the burden of production in any Court proceeding with respect to liability for an addition to tax. The Commissioner satisfies this burden of production by coming forward with sufficient evidence that the taxpayer did not file his return by the due date of the return. See Wheeler v. Commissioner, 127 T.C. 200, 207-208 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent has satisfied his burden of production by introducing a certified copy of petitioner's account transcript that reflects that petitioner's 2011 Form 1040 was not filed until December 31, 2012, over two months past the extended due date of October 15, 2012. See sec. 7491(c); Wheeler v. Commissioner, 127 T.C. at 207-208; Higbee v. Commissioner, 116 T.C. at 446.

Reasonable cause and the absence of "willful neglect" are defenses to the section 6651(a)(1) addition to tax. Sec. 6651(a)(1). "[W]illful neglect" means a

"conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985). "The determination of whether reasonable cause exists is based on all the facts and circumstances." Ruggeri v. Commissioner, T.C. Memo. 2008-300, 2008 WL 5411919, at *2. A taxpayer meets the reasonable cause exception if he demonstrates that he "exercised ordinary business care and prudence" in trying to file his return. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. This determination is factual, and the burden of proof is on the taxpayer. Merriam v. Commissioner, T.C. Memo. 1995-432, 1995 WL 522813, at *11, aff'd without published opinion, 107 F.3d 877 (9th Cir. 1997).

Petitioner did not provide evidence that his failure to timely file was due to reasonable cause. Although petitioner discussed his computer failure that occurred sometime before July 2011, it occurred over a year before his 2011 tax return was due. Thus, we find that petitioner is liable for the section 6651(a)(1) addition to tax. See sec. 6651(a)(1); Ruggeri v. Commissioner, 2008 WL 5411919, at *2; Merriam v. Commissioner, 1995 WL 522813, at *11; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

IX. Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty on any portion of an underpayment of Federal income tax that is attributable to the

taxpayer's "negligence or disregard of rules or regulations" or "substantial understatement of income tax."

An understatement of Federal income tax is substantial if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A). If the understatement of income tax for the year in issue is substantial, the Commissioner has satisfied the burden of producing evidence that the penalty is justified. Respondent met this burden because the amount of petitioner's understatement for 2011 is substantial.[13]

Once the Commissioner has met his burden, the taxpayer may rebut the evidence that a section 6662(a) accuracy-related penalty is appropriate if he can demonstrate (1) reasonable cause for the underpayment and (2) that he acted in good faith with respect to the amount paid. Sec. 6664(c)(1). A determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax

---

[13]Petitioner's notice of deficiency reflected an increase in tax of $15,453. Because petitioner is entitled to a deduction of only $409 for charitable contribution expenses, the reduction of this increase in tax will be minimal. Thus, the amount of tax required to be shown on petitioner's 2011 return is approximately $23,000 ($7,765 reported on return + $15,453 increase in tax = $23,218). This $15,453 increase in tax is greater than $5,000, which is greater than $2,322, which is 10% of $23,218. See sec. 6662(d)(1)(A).

Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id.; see also Humphrey, Farrington & McClain, P.C. v. Commissioner, T.C. Memo. 2013-23, at *33-*34.

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code and any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348, 353 (9th Cir. 1991); see also Neely v. Commissioner, 85 T.C. 934, 947 (1985). The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

Nothing in the record suggests that petitioner consulted with a professional adviser or conducted research before preparing his 2011 income tax return. Petitioner asserts that when preparing his 2011 Form 1040 using TurboTax he mistakenly filed one of these "what if" versions instead of the correctly prepared version and that this mistake explains some of the errors in claimed deductions and withholding. Petitioner asserts that his filing of a 2011 Form 1040 that was not intended to be complete resulted in some of the errors conceded.

We found petitioner's testimony and the screenshot he provided credible, and we believe that he mistakenly submitted an incorrect version of his 2011 Form 1040. However, petitioner's explanation about this error does not demonstrate that he exercised due care in the preparation of his tax return. It is unclear why petitioner would have created versions of his return with incorrect information. Further, this explanation does not account for all of the deductions disallowed; for example, this does not explain petitioner's failure to substantiate his charitable expense deductions. Thus, we are not convinced that petitioner made a reasonable attempt to comply with the Code. See sec. 6662(c); Allen v. Commissioner, 92 T.C. at 12; Neely v. Commissioner, 85 T.C. at 947; sec. 1.6662-3(b)(1), Income Tax Regs.

Petitioner's recordkeeping was disorganized, and the documents that he provided were difficult to read. Additionally, some appeared to be inaccurate. Petitioner's computer failure does not account for his failure to keep proper records for the remainder of 2011, nor does it account for his failure to provide the bank statements he used to reconstruct his expenses. Thus, we are not convinced that petitioner made a reasonable attempt to keep adequate books and records or to substantiate items properly. See sec. 6662(c); Allen v. Commissioner, 92 T.C. at 12; Neely v. Commissioner, 85 T.C. at 947; sec. 1.6662-3(b)(1), Income Tax Regs.

Accordingly, we sustain the accuracy-related penalty.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.